Estate of Emil H. Dietz, Deceased, Emil H. Dietz, Jr., Executor, et al. [1] v. Commissioner. Estate of Dietz v. Commissioner
Docket Nos. 50413-50415.
United States Tax Court
T.C. Memo 1957-116; 1957 Tax Ct. Memo LEXIS 134; 16 T.C.M. (CCH) 482; T.C.M. (RIA) 57116; June 28, 1957
*134 Theodore Propp, Esq., and Stanley H. Handman, Esq., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for the year 1946 as follows: Docket
No.
Petitioner
Deficiency
50413
Estate of Emil H. Dietz
$14,722.70
50414
Harry H. Dietz
492.29
50415
Gustave Dietz
9,426.70
The only issue for decision is whether the cancellation of certain loans of unpaid salaries made by petitioners to their father resulted in a deductible loss in 1946. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. Petitioners Harry H. Dietz and Gustave Dietz reside in New York, New York. Emil H. Dietz died on November 6, 1952, and his son Emil H. Dietz, Jr., duly qualified co-executor of the estate of Emil H. Dietz, is petitioner in Docket No. 50413. The returns for the years in question were timely filed with the collector of internal revenue for the first district of New York. Emil Dietz, Louis Dietz, Gustave Dietz, Harry H. Dietz, May Pflug, and *135 Gertrude Burkard were all the children of Philip Dietz. Katherine Dietz was Philip's wife. Louis died on or about April 9, 1928. Philip Dietz was the sole proprietor of the Philip Dietz Coal Company (hereinafter referred to as the company). As his sons became of age, they entered the business. Emil started working for the company in 1908, Gustave in 1913, and Harry in 1920. Philip's business was a growing one and, at his request, the sons did not draw the full amounts of salaries and bonuses with which their accounts were credited on the company's books, although they included the full amounts in their tax returns. Petitioners could have withdrawn their full salaries had they so wished. Philip died on August 13, 1925. The company was incorporated as the Philip Dietz Coal Company, Inc. (hereinafter referred to as the corporation), shortly before Philip's death. The debts owed by the company to the Dietz children were not assumed by the corporation but continued to be obligations of Philip. As of his death, Philip was indebted to his family in the following amounts (hereinafter referred to as family credit balances): Emil
* $ 69,751.04
Gustave
* 41,258.42
Harry
* 1,000.00
Louis
* 51,059.70
Katherine
** 19,706.46
Gertrude
** 4,700.00
Total
$187,475.62
*136 At his death, Philip owned all 6,000 shares of the corporation's outstanding stock. Philip's will contained, inter alia, the following provisions: 1. Philip's stock in the corporation was to be held in two trusts. The first trust, consisting of 2,500 shares of the corporation's stock, was created for the benefit of Katherine during her life, with remainders over to the children. The will provided that "as soon as the profits of [the] Corporation warrant," the corporation was to buy one-half of its shares held in the Katherine trust and retain these shares as treasury stock. The money paid to the trust was to be invested in securities that are allowed by law as investments for savings banks and trustees. The remaining 3,500 shares of stock of the corporation were put into a trust for the equal benefit of all six of Philip's children. This trust was to end on July 1, 1940. 2. Philip's sons were designated as executors of the will and directors of the corporation. The will directed that they should be elected officers of the corporation and their salaries and bonuses *137 were directed to be in the same amounts "that they are now receiving at the date hereof [the will] from said Corporation * * *." In an agreement, dated January 31, 1930, between Katherine, the children as individuals, and the sons as executors, the following changes were made in Katherine's trust: 1. The sons, acting as individuals, agreed to purchase one-half of the stock in Katherine's trust for $150 a share. 2. The parties agreed that the proceeds of this sale should be distributed in equal shares to all the children and treated as a partial distribution of Philip's estate, regardless of any provision of Philip's will to the contrary. 3. May and Gertrude were paid $37,500 each by the sons as their shares of the distribution. 4. The stock was to be retained by the sons in Katherine's trust until such time as the sons substituted securities therefor of an equivalent value. The effect of this agreement was to place the ownership of 1,250 shares of the corporation's stock in the sons as individuals, subject to an equitable life estate of Katherine in return for payments to May and Gertrude of $37,500 each. Katherine died in 1940. On June 18, 1940, May and Gertrude instituted *138 suit against Emil, Gustave, and Harry in the Supreme Court, Queens County, New York. The complaint alleged, first, that the sons, as executors of Philip's estate and officers and directors of the corporation, had mismanaged the corporation in that, among other things, they had voted themselves salaries and bonuses in excess of the amounts permitted by Philip's will and had failed to declare and pay dividends on the corporation's stock, and, second, that they had fraudulently and through breach of their duty as executors and trustees caused the agreement of January 31, 1930, to be executed. The complaint asked, inter alia, that the sons be required to account to the corporation (which was also named as a defendant in the suit) for their actions as directors and officers; that they pay to the corporation money and property acquired by them in violation of their official duties, including compensations received by them in excess of the amounts provided for in Philip's will; that they be required to pay dividends on the corporation's stock; and that the 1930 agreement be declared invalid. In December 1942 the surviving sons, as executors of Philip's estate, filed an accounting of *139 the estate with the Surrogate's Court of Queens County, New York, together with a verified petition praying for the judicial settlement of the estate. The accounting stated that overpayments had been made to all of the children and requested the Court to order them recouped. These overpayments were alleged to have resulted from a decree entered by the Surrogate's Court on November 20, 1942, in an action brought to construe Philip's will, which decree held invalid the trust of the 3,500 shares of the corporation's stock created for the benefit of Philip's six children. The accounting listed the family credit balances as unpaid charges against the estate. May and Gertrude filed objections to the above accounting on May 22, 1945. A supplemental accounting was filed on August 24, 1945, and objections to it were filed by May and Gertrude on September 18, 1945. On or about May 22, 1946, the children entered into an agreement denominated "Stipulation of Settlement, as Finally Revised on or about May 22nd, 1946." It was filed in the Surrogate's Court of Queens County "In the Matter of Judicial Settlement of the Account of Proceedings of EMIL H. DIETZ, GUSTAVE F. DIETZ and HARRY H. DIETZ, *140 as Surviving Executors under the Last Will and Testament of PHILIP DIETZ, late of the County of Queens, Deceased." The first paragraph of the agreement reads as follows: "It is hereby stipulated, consented to and agreed by and between the attorneys appearing herein and the respective parties hereto that the original objections and the supplemental objections heretofore filed herein be, and the same hereby are, settled and disposed of as follows:" The agreement then went on to provide that: 1. The objections were to be withdrawn. 2. Each of the children was to give 200 shares of the corporation's stock to the corportation. The estate was to give certain securities with a value of $27,328.04 to the corporation. These transfers were in complete settlement of all claims of the corporation against the children as individuals and the sons as executors. 3. The remaining 5,000 shares of the corporation's outstanding stock were to be redivided among the children, 1,100 shares to Emil, and 975 shares to each of the four others. 4. General and mutual releases were to be executed by all parties. 5. Harry was to give Emil $2,500. 6. May and Gertrude were to assign their interests *141 in the remaining estate to the sons in consideration for the above stock realignment and the payment to them of $25,000. 7. The sons were to hold the remaining assets of the estate in equal shares. 8. The suit by May and Gertrude instituted in the Supreme Court, Queens County, New York, was to be discontinued. 9. The family credit balances were to be canceled. 10. Previous salaries and bonuses paid to the officers of the corporation were ratified. 11. May and Gertrude were to be added to the corporation's board of directors. 12. Future salaries and bonuses for the officers of the corporation were set. The terms of this agreement were carried out and on September 3, 1946, a final accounting was accepted by the Surrogate's Court of Queens County, New York, which recited the agreement and the compliance with it, and the executors were discharged. The accounting showed a balance on hand of $4,956.31, which was to be distributed among the petitioners. In their tax returns for 1946, petitioners took deductions for losses in the amounts of the family credit balances canceled by them. Opinion KERN, Judge: The question presented herein is whether petitioners are entitled *142 to deduct as losses the family credit balances canceled by them in the 1946 settlement. Respondent contends, first, that no loss was incurred, and, second, that the loss, if any, was sustained as part of a settlement of Philip's estate and, therefore, is not deductible. , affirming . The petitioners' position is that the cancellation of these family credit balances was in reality the restoration of salaries and bonuses received by them under a claim of right between Philip's death in 1925 and the institution of suit by May and Gertrude in 1940. ; . Petitioners also argue that since they were in the trade or business of being officers and directors of the corporation, the cancellation of the family credit balances is a deductible item to them because it was a loss incurred in settlement of the 1940 suit, which threatened them with a possible liability for the mismanagement of the corporation as such officers and directors. ; . *143 The crucial question in this proceeding is whether the 1946 agreement was primarily for the purpose of settling the 1940 suit against petitioners, or primarily for the purpose of effecting a settlement of Philip's estate. Petitioners' contentions are predicated on the assumption that the cancellation of the family credit balances and the discontinuation of the 1940 suit were the major factors behind the settlement. The record does not support this assumption. As of the date of the settlement, May 22, 1946, both proceedings were pending. Both were settled pursuant to the terms of the stipulation of settlement. The only evidence adduced at the hearing as to the intent of the signers of the settlement was contained in Gustave's testimony. However, this testimony was sketchy and inconclusive. Therefore, we must be guided by the words of the agreement itself. Although the agreement disposed of both judicial proceedings, it is clear to us that it was primarily designed to effect a settlement of Philip's estate. The first paragraph of the settlement recites that the objections to the accounts of the executors are to be disposed of by means of the detailed transactions called for by *144 the agreement. As this paragraph indicates, the agreement calls for much more than would be necessary to merely compromise the 1940 suit by canceling the family credit balances. In addition to the discontinuation of the suit and cancellation of the credit balances, the agreement provides, inter alia, for such diverse transactions as reapportionment of the stock, transfer of part of the stock by each child to the corporation, payments to May and Gertrude, and the payment by Harry to Emil of $2,500. We can find no basis for holding that the withdrawal of the 1940 suit and the cancellation of the family credit balances were more than just two of the terms of the agreement settling the decedent's estate, or that the one constituted the controlling quid pro quo for the other. We also think it significant that the family credit balances canceled by the agreement involved the whole family, not only the sons. For instance, Gertrude relinquished her claim for $4,700 as compared to petitioner Harry's relinquishment of his claim for $1,000. The final settlement was incorporated into the executors' accounting and became the basis for their discharge. After a careful review of the agreement and *145 its place in the record, we conclude that this agreement was a primary requisite and an integral part of the settlement of Philip's estate, in which the settlement of the 1940 suit was a secondary and incidental step, and that petitioners did not incur any deductible loss under the 1946 settlement. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Harry H. Dietz, Docket No. 50414; Gustave Dietz, Docket No. 50415.↩
*. These amounts represent unpaid salaries. ↩
**. The record does not show how these debts were contracted.↩